Paul GAGNON, individually and through class representation on behalf of a class consisting of all other similarly situated owner-operators, Plaintiff,

v.

SERVICE TRUCKING INC., a Florida corporation, Defendant.

No. 5:02–cv–342–Oc–10GRJ.

United States District Court,
M.D. Florida,
Ocala Division.

May 1, 2003.

Lennon E. Bowen, III, Jason M. Radson, Derek A. Schroth, Bowen & Campione, P.A., Eustis, FL, for Paul Gagnon, individually and through class representation on behalf of a class consisting of all other similarly situated owner-operators.

Pedro Raul Alvarez, Jr., Alvarez, Sambol, Winthrop & Madson, P.A., Mark Howard Ruff, Alvarez, Sambol, Winthrop & Madson, P.A., Orlando, FL, for Service Trucking Inc, a Florida corporation.

## ORDER

HODGES, District Judge.

The United States Magistrate Judge has issued a report (Doc. 49) recommending that the Defendant's motion to compel arbitration (Doc. 22) be denied. The Defendant has objected to the report and recommendation of the Magistrate Judge (Doc. 52), but merely reasserts arguments already thoroughly discussed and properly decided by the Magistrate Judge.[1] The Defendant's objections are due to be overruled.

Upon an independent examination of the file and upon due consideration, the Defendant's objections (Doc. 52) are OVERRULED, the report and recommendation of the Magistrate Judge (Doc. 49) is adopted, confirmed and made a part hereof, and the Defendant's motion to compel arbitration (Doc. 22) is DENIED.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION[1]

JONES, United States Magistrate Judge.

Pending before the Court is Defendant's Motion To Compel Arbitration (Doc. 22) and the accompanying memorandum of law. (Doc. 23.) Plaintiff has filed a memorandum of law in opposition to Defendant's motion to compel arbitration (Doc. 39) and, therefore, the matter is ripe for review. For the reasons discussed below, Defendant's Motion To Compel Arbitration (Doc. 22) is due to be **DENIED**.

## I. INTRODUCTION

This is an action involving claims by owner-operators of tractor trailers against a federally regulated motor carrier alleging that the contracts entered into between the parties do not comport with federal law governing Federal Motor Carrier Truth–In–Leasing regulations.[2] Plaintiff, Paul Gagnon, is one of the owner-operators, who leases motor vehicle equip-

---

1. The Plaintiff has also responded to the Defendant's objections (Doc. 56)

---

1. Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determina-

tion by a district judge and from attacking factual findings on appeal.

2. In addition to the claim of Plaintiff, there is a request that a class be certified consisting of owner-operators who have leased equipment to Defendant pursuant to Defendant's Lease Agreement. The memorandum in support of class certification has not yet been filed and

ment to the Defendant and provides driving services for Defendant. Defendant is a federally regulated motor carrier engaged in the business of transporting goods in interstate and intrastate commerce.

On or about August 1, 2002, Plaintiff and Defendant entered into a contract entitled "Independent–Contractor Operating Agreement" ("Lease Agreement"), which governs the terms of the leasing of Plaintiff's trucking equipment to Defendant, the transportation services to be provided by Plaintiff and the terms of payment. The provision of the Lease Agreement, which is relevant to the pending motion, is the arbitration clause in paragraph 16. Paragraph 16 provides in relevant part that "to the extent any disputes arise under this agreement or its interpretation, we both agree to submit such disputes to final and binding arbitration before the American Arbitration Association at a point agreed upon or (sic) Orlando, Florida." Based on this clause in the Lease Agreement, Defendant requests that the Court compel Plaintiff to arbitrate the claims in this case pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C.A. § 2.[3]

Defendant counters that the Court should not compel arbitration of the claims in this case because: (1) section 1 of the FAA exempts from coverage disputes involving employment contracts of truck drivers engaged in interstate commerce; (2) Defendant has waived any right to

compel arbitration by acting inconsistently with the right to arbitrate; and (3) the scope of the arbitration clause in the Lease Agreement does not extend to the types of statutory claims involved in this case. Because the Court concludes that the FAA exempts from its provisions the claims under employment contracts of truck drivers involved in interstate commerce, the Court does need to address the issue of waiver or the issue of whether the language in paragraph 16, covers the claims alleged in this case.

## II. DISCUSSION

The FAA mandates judicial enforcement of a wide range of written arbitration agreements.[4] Section 2, the coverage provision of the FAA, provides that:

"[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

█ Although, there is a strong presumption in favor of arbitration under the FAA,[5] section 1, however, expressly limits the reach of the FAA by exempting from

---

therefore the motion for class certification is not ripe.

**3.** Defendant argues that because the dispute concerns interstate commerce, the FAA supercedes the Florida Arbitration Act. Plaintiff does not disagree. The Court agrees, and, accordingly, because the dispute implicates interstate commerce the Court finds that the FAA controls. *See, Huber, Hunt & Nichols, Inc. v. Architectural Stone Co., Inc.*, 625 F.2d 22, 25 (5th Cir.1980)(FAA controls in an ac-

tion to enforce the arbitration provision of a contract in interstate commerce).

**4.** *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111, 121 S.Ct. 1302, 1307, 149 L.Ed.2d 234 (2001).

**5.** *See, Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991)(noting that Federal Arbitration Act manifests a liberal federal policy favoring arbitration agreements).

its coverage certain contracts of employment of transportation workers. Specifically, section 1 provides in relevant part that: "nothing contained herein [the FAA] shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."[6] The Court therefore, must decide whether the Plaintiff in this case falls within the definition of "other class of workers engaged in foreign or interstate commerce" and then, if so, whether this case concerns a "contract of employment."

Turning first to whether owner-operators, like Plaintiff, are workers engaged in interstate commerce, Plaintiff argues that because he is a truck driver, who transports goods across state lines, he should be included in the "class of workers engaged in interstate commerce." The Court agrees that the Plaintiff—and the other putative class members, all of whom are truck drivers—fall within the definition of "workers engaged in interstate commerce." This conclusion is consistent with the interpretation of § 1 of the FAA, by the Supreme Court,[7] as well as the view of the Eleventh Circuit and other district courts that have addressed whether truck drivers are excluded under the FAA as "other workers engaged in interstate commerce."[8]

■ Having determined that truck drivers fall within the class of transportation workers that are excluded under the FAA, the Court also must determine whether the Lease Agreement in this case is a "contract of employment" as used in the FAA in order for the exemption to apply. If the Lease Agreement constitutes a contract of employment the exemption in the FAA would apply and, thus, arbitration would not be mandated under the FAA. Conversely, if the Lease Agreement does not constitute an "employment contract" the exemption would not apply and the Court would be required to compel arbitration, assuming that there was no waiver and the scope of the arbitration clause covered the claims in this case.

The text of the FAA is not particularly helpful in defining the term "contract of employment" nor is there any case law that expressly deals with the issue of whether a Lease Agreement, like the one in the instant case, constitutes an employment contract for the purposes of the FAA. Accordingly, the Court must turn to federal law dealing with Motor Carriers to determine whether the contract is one of employment or whether the contract establishes an independent contractor relationship. Although the Court takes note of the fact that the Lease Agreement is titled "Independent–Contractor Operating Agreement" how the employment relationship is described by the parties in the employment documents is not dispositive.[9]

---

**6.** 9 U.S.C. § 1.

**7.** *Circuit City Stores, Inc.*, 532 U.S. at 119, 121 S.Ct. 1302 (interpreting the residual clause of section 1 to exempt from the FAA only contracts of employment of transportation workers.).

**8.** *See, e.g. American Postal Workers Union, AFL–CIO v. United States Postal Service*, 823 F.2d 466, 473 (11th Cir.1987)("Numerous courts have limited the exclusion [section 1] to 'workers actually engaged in interstate commerce,' including bus drivers and truck

drivers."); *Rosen v. Transx Ltd.*, 816 F.Supp. 1364, 1371 (D.Minn.1993)("Further, Rosen was employed as a truck driver and the court finds that truck drivers are members of a 'class of workers engaged in interstate commerce.'"); *Central States, Southeast and Southwest Areas Pension Fund v. Tank Transport, Inc.*, 779 F.Supp. 947, 949 (N.D.Ill.1991)(finding that truck drivers are excluded under FAA).

**9.** *Wolf v. Coca–Cola Company*, 200 F.3d 1337, 1340 (11th Cir.2000).

Federal treatment of the special relationship between truck drivers and motor carriers, for whom they drive in interstate commerce, directly addresses the issue of whether truck drivers are considered to be employees or independent contractors. The Eleventh Circuit in *Judy v. Tri–State Motor Transit Co.,*[10] found that 49 U.S.C. § 14102 created a *statutory employer-employee* relationship between truck drivers and motor carriers. Similarly, other courts that have considered the issue have also held that there is a statutory employer-employee relationship between truck drivers and the motor carriers for whom they drive under a contractual relationship, even if the contractual relationship is a lease arrangement.[11]

The reason courts have imposed a statutory employer-employee relationship between truck drivers and the motor carriers, is premised on 49 U.S.C. § 14102, which requires motor carriers to assume control and responsibility of operating

leased motor vehicles.[12] Although, most courts that have held that the motor carrier is the statutory employer of the truck driver have done so in the context of a tort claim,[13] the same rationale applies in the instant case. Even though, the Lease Agreement is not labeled as an employment agreement the fact remains that the Defendant by operation of federal law is deemed to have assumed the responsibility and the duty to control the vehicle, a key ingredient in determining whether a relationship is deemed to be employer-employee or is deemed to be an independent contractor relationship.

In addition to the fact that there is a statutory employer-employee relationship between the Plaintiff and the Defendant, application of common law agency principles under federal law further supports the conclusion that the Lease Agreement is an employment contract.[14] Frequently, where there is an issue as to whether an individual is an employee under other federal statutes, federal courts have looked to common law agency principles.[15]

10. 844 F.2d 1496, 1500–01 (11th Cir.1988)

11. *See Reynolds v. Con–Way Transportation Services,* 2002 WL 2027289, *3 n. 7 (M.D.Fla. 2002) ("The Eleventh Circuit has found section 14102 to create a statutory employer-employee relationship."). *See also, Price v. Westmoreland,* 727 F.2d 494 (5th Cir.1984) (owner/operator who leased tractor to and drove for interstate carrier was statutory employee of the carrier and traditional common law doctrine of master-servant relationships and respondeat superior did not apply); *Heaton v. Home Transportation Company,* 659 F.Supp. 27, 31 (N.D.Ga.1986) (statutory employment relationship found in personal injury action by owner-operator who leased tractor and provided driving services to motor carrier under a contractor agreement).

12. *See* 49 U.S.C. § 14102(a)(4) (formerly 49 U.S.C. § 11107(a)(4) and 49 U.S.C. § 304(e)(2)). In 1959, Congress adopted amendments to the Interstate Motor Common Carrier Act, 49 U.S.C. § 304(e)(2), requiring a motor carrier to assume "full direction and control" of leaved vehicles in order to address

the motor carriers practice of immunizing themselves from the negligence of the drivers by making them "independent contractors". *White v. Excalibur Insurance Company,* 599 F.2d 50, 52 (5th Cir.1979). *See also* 49 C.F.R. § 376.12(c)(1) (formerly 49 C.F.R. § 1057.12(c)(1)).

13. *See, e.g., Simmons v. King,* 478 F.2d 857, 867 (5th Cir.1973) ("Since under the lease [carrier] assumed exclusive possession, control, and use of the vehicle and responsibility to the public then [driver] became his statutory employee, and as such [carrier] was vicariously liable as a matter of law for the negligence of [driver]."); *White,* 599 F.2d 50 (even though motor carrier leased the vehicle it was statutory employer because of its legal right and duty to control the vehicle).

14. *See Toomer v. United Resin Adhesives, Inc.,* 652 F.Supp. 219 (N.D.Ill.1986), where relationship determined by common law principles.

15. *See, Nationwide Mutual Insurance Company v. Darden,* 503 U.S. 318, 112 S.Ct. 1344,

■ The common law factors relevant to the determination of whether an employment relationship is present include: (1) the hiring party's right to control the manner and means by which the product is accomplished; (2) the skill required; (3) the source of the instrumentalities and tools; (4) the location of the work; (5) the duration of the relationship between the parties; (6) whether the hiring party has the right to assign additional projects to the hired party; (7) the extent of the hired party's discretion over when and how long to work; (8) the method of payment; (9) the hired party's role in hiring and paying assistants; (10) whether the work is part of the regular business of the hiring party; (11) whether the hiring party is in business; (12) the provision of employee benefits; (13) the tax treatment of the hired party.[16]

Application of these criteria to the Lease Agreement confirms that the relationship is more in the nature of an employment relationship. For example, and most notably, by virtue of 49 U.S.C. § 14102, and as expressly mandated in the "Lease Agreement" [17], Defendant has control over and is responsible for operating the vehicles leased to it, which is one of the key indicia of an employment relationship. Moreover, the Lease Agreement is renewable each year after its initial expiration at the end of the year. Further, the work—providing transportation of goods—is the main focus of Defendant's regular motor carrier business. In addition, Defendant is responsible under the Lease Agreement for securing and distributing to Plaintiff permits for road use, mileage and fuel taxes. All of these circumstances relating to how the relationship actually operates are highly suggestive of an employment relationship.

While, under the Lease Agreement Plaintiff is paid on a per-load basis, selects the routes, and Defendant does not withhold income taxes, these circumstances do not outweigh the fact that the key ingredient—control—is in the hands of the Defendant. Accordingly, the Court concludes that the relationship between the parties must be interpreted as an employment relationship.[18]

Lastly, in examining the purpose behind the exclusion in § 1 of the FAA, the Supreme Court highlighted in *Circuit City Stores*, that Congress' concerns over the free flow of goods and its authority to govern those relationships, was the reason that the contracts of transportation work-

---

117 L.Ed.2d 581 (1992)(adopting common-law test for determining whether plaintiff was an "employee" under ERISA, where definition in ERISA was not helpful); *Community For Creative Non–Violence v. Reid*, 490 U.S. 730, 739, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)("in the past, when Congress has used the term 'employee' without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by the common-law agency doctrine.").

16. *Darden*, 503 U.S. at 323, 112 S.Ct. 1344 (quoting from *Reid*, 490 U.S. at 751–752, 109 S.Ct. 2166).

17. For example, paragraph 6 of the Lease Agreement requires Plaintiff to give to Defendant "possession, control, and use of the equipment [the truck] and use of [the] equipment [it] need[s] to meet applicable regulations which [it] shall accept and further agrees to complete responsibility for the operation of the equipment as contemplated by the Leasing Regulations of the Federal Motor Carriers Safety Regulations for the duration of the this lease."

18. This result is consistent with the determination of the court in *Judy* where the Eleventh Circuit, looking to Florida law, found that the driver was an employee of the carrier where the driver was subject to the carrier's direction and control and did not have an ICC permit nor own any of his equipment, despite the fact he was paid on a per job basis, the income taxes were not withheld from his salary, and the contract referred to him as an independent contractor. *Id.* at 1505–06.

ers were exempted from the FAA. Where, as here, contracts between carriers and transportation workers, who are actually engaged in the movement of goods in interstate commerce are concerned, Congress has chosen to remove these classes of workers from the FAA, so that in exercising its authority over interstate commerce, Congress can separately deal with these workers, if it so chooses.

Accordingly, for all of these reasons, the Court concludes that the arbitration clause in paragraph 16 of the Lease Agreement is not enforceable under the FAA, because the Lease Agreement constitutes a contract of employment of a class of worker engaged in interstate commerce. Therefore, Defendant's motion to compel arbitration under the FAA must be denied.

## III.  *RECOMMENDATION*

In view of the foregoing, it is respectfully **RECOMMENDED** that Defendant's Motion To Compel Arbitration (Doc. 22) be **DENIED.**