Marion CARNEY and Mervin Carney, individually, and on behalf of all similarly situated individuals, Plaintiffs,

v.

JNJ EXPRESS, INC., Defendants.

No. 13–2935.

United States District Court, W.D. Tennessee, Western Division.

Signed April 4, 2014.

Robert W. Murphy, Law Office of Robert W. Murphy, Fort Lauderdale, FL, Charles L. Holliday, Law Office of Jeffrey A. Garrety, Jackson, TN, for Plaintiffs.

Gary E. Veazey, Johnson Grusin Kee & Surprise, Memphis, TN, for Defendants.

## ORDER GRANTING MOTION TO COMPEL ARBITRATION

SAMUEL H. MAYS, JR., District Judge.

Before the Court is Defendant JNJ Express, Inc.'s ("JNJ") December 9, 2013 Motion to Compel Arbitration and to Stay Proceedings, or in the alternative, to Dismiss Plaintiffs' Claims, With Prejudice. (Mot. Compel Arb., ECF No. 6.) Plaintiffs Marion Carney and Mervin Carney (the "Carneys"), individually, and on behalf of all similarly situated individuals, responded on January 6, 2014. (Resp., ECF No. 12.) JNJ replied on January 22, 2014. (Reply, ECF No. 19.)

For the following reasons, JNJ's Motion to Compel Arbitration is GRANTED.

### I. Background

JNJ is a motor carrier that transports property in interstate commerce under the authority of the U.S. Department of Transportation. (Compl. ¶ 1, ECF No. 1–1.) JNJ uses equipment leased from independent truck drivers. (*Id.*)

Authorized motor carriers may transport property in leased equipment only if the equipment is covered by a written lease that meets the requirements of the Truth in Leasing Regulations ("TIL"), 49 C.F.R. § 376.12. 49 C.F.R. § 376.11(a). If an authorized carrier fails to comply with those requirements, a person injured by that failure may bring an action for dam-

ages under 49 U.S.C. § 14704(a)(2) and recover attorney's fees under 49 U.S.C. § 14704(e).

The Carneys each executed a written lease agreement (the "Leases") with JNJ on or about October 21, 2012. (Compl. SI 3; L433, Exh. A; ECF No. 1–1; L461, Exh. B, ECF No. 1–1.) The Leases are the same in all material respects and are entitled "Independent Contractor Lease Agreements." (L433 at 1; L461 at 1.) JNJ is the "carrier-lessee." (*Id.*) The Carneys are the "contractor-lessors." (*Id.*) The "equipment" is a truck that the Carneys had previously leased from JNJ and are now leasing back to it. (L433 Sch. A, Sch. E; L461 Sch. A, Sch. E.)

The Leases state that JNJ "shall have only such degree of control of the equipment as is required by the Interstate Commerce Commission or other relevant federal administrative agency." (L433 ¶ 2; L461 ¶ 2.) The Leases provide that the term "Contractor–Lessor" shall include the Carneys and their agents. (L433 ¶ 3; L461 ¶ 3.) The Leases provide that the Carneys "shall determine the means and methods of [their] performance of all transportation services undertaken by [them] pursuant to the terms and conditions of this Agreement." (L433 ¶ 12; L461 ¶ 12.) The Carneys are responsible for "(A) [o]btaining, selecting, purchasing, financing, and maintain[ing] the Equipment; (B) [s]electing all routes; (C) [s]cheduling of work by [the Carneys] after commodities are tendered to [them]." (*Id.*) The Carneys "shall exercise all diligent efforts to conduct [their] operations under this Agreement in a manner which assures continued customer satisfaction." (L433 ¶ 15; L461 ¶ 15.)

The Carneys are responsible for carrying primary insurance and worker's compensation insurance. (L433 ¶¶ 9–10; L461 ¶¶ 9–10.) They "shall be responsible for the cost of fuel, oil, ... maintenance, repairs, tires, [and] other items necessary for the proper operation of the equipment. . . ." (L433 ¶¶ 5, 21; L461 ¶ 5, 21.) JNJ may pay for insurance, repairs, parts, supplies, and charges for services such as maintenance or repair under the Leases (the "charge-back items"). (L433 ¶ 7; L461 ¶ 7.) If JNJ pays those costs, they are to be deducted from the Carneys' compensation. (*Id.*) The Leases require the Carneys to deposit a minimum of $1,000.00 to guarantee performance of the terms of the Leases (the "Escrow Account"). (L433 SI 13A; L461 SI 13A.) JNJ can use the Escrow Account to pay for the charge-back items. (*Id.*)

The Leases' material breach definition includes "the use by [the Carneys] of any unauthorized passengers, driver/helper or agent on the equipment designated herein without prior consent of [JNJ], in writing." (L433 ¶ 14; L461 ¶ 14.)

Each Lease contains an arbitration clause. That clause provides:

> Each of the parties hereto agrees to submit to binding arbitration any and all differences and disputes which may arise between them, their heirs, successors, assigns, employees, officers, directors, affiliates, subsidiaries, or shareholders which are related to this Agreement. Prior to initiating arbitration, the parties shall first meet face-to-face to effect a resolution of the differences. Any differences which the parties are unable to resolve in said face-to-face meeting shall be heard and finally settled at a mutually agreed upon location by the parties, by binding arbitration in accordance with the Commercial Rules of the American Arbitration Association. If the parties do not agree upon a location, the arbitration proceeding shall be conducted in Memphis, Tennessee. Any award entered in

any such arbitration shall be final, binding, and may be entered and enforced in any court of competent jurisdiction.

(L433 ¶ 25; L461 ¶ 25.) The Carneys initialed their individual Leases under the arbitration clause. (L433 at 10; L461 at 10.)

The Carneys filed a complaint in Tennessee state court on October 24, 2013. (Compl. at 1.) The Carneys did not meet with JNJ face-to-face as required by the arbitration clause before filing the complaint. (Memo. Supp. Mot. Compel Arb. ¶ 8, ECF No. 6–1.) The Carneys allege that the Leases do not meet the requirements of the TIL under 49 C.F.R. § 376.12. (*Id.* ¶ 3.) They allege that some terms required by the regulations are missing from the Leases and that other terms conflict with the terms listed in § 376.12. (*Id.*) The Carneys allege that JNJ has "engaged in a pattern and practice of ignoring its [federal] obligations" leading to violations of TIL regulations and the Leases. (*Id.*) The Carneys seek: (1) a declaratory judgment that JNJ's practices violate TIL regulations; (2) an accounting of all amounts JNJ has wrongfully charged back or failed to pay; and (3) damages. (*Id.* ¶ 6.)

JNJ removed this case on December 2, 2013. (Not. Rem., ECF No. 1.)

## II. Jurisdiction

The Court has federal question jurisdiction over the Carneys' claims for violations of TIL regulations under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the Carneys' state law claim for breach of contract under 28 U.S.C. § 1367.

## III. Standard of Review

■ The Federal Arbitration Act ("FAA") strongly favors arbitration. *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 289,

122 S.Ct. 754; 151 L.Ed.2d 755 (2002). To be enforceable, an arbitration agreement must be (1) in writing and (2) involve a transaction in interstate commerce. 9 U.S.C. § 2. Such an arbitration agreement "shall be valid, irrevocable, and enforceable." *Id.*

■ "Any doubts about whether an [arbitration] agreement is enforceable, including defenses to arbitrability, should be resolved in favor of arbitration." *Johnson v. Long John Silver's Rests., Inc.,* 320 F.Supp.2d 656, 663 (M.D.Tenn.2004) (internal citation omitted). "[A]bsent a showing of fraud, duress, mistake, or some other ground upon which a contract may be voided, a court must enforce a contractual agreement to arbitrate." *Haskins v. Prudential Ins. Co. of Am.,* 230 F.3d 231, 239 (6th Cir.2000).

■ On a motion to compel arbitration: The court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir.2000) (internal citation omitted). After the court hears the parties:

[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement ... be in issue,

the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4; *Great Earth Cos., Inc. v. Simons,* 288 F.3d 878, 889 (6th Cir.2002).

■■ The showing necessary to compel arbitration absent trial is the same as the showing necessary for summary judgment in a civil suit. *Id.* The moving party must "clearly and convincingly establish[ ] the nonexistence of any genuine issue of material fact, and the evidence ... must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986). In particular, the moving party must show the existence of "a binding agreement to arbitrate." *In re First Thermal Systems, Inc.,* 182 B.R. 510, 513 (Bankr.E.D.Tenn.1995).

■ If that showing is made, the burden shifts to the non-moving party to prove "that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). This requires evidence beyond mere allegations and denials. *See Great Earth Companies, Inc. v. Simons,* 288 F.3d 878, 889 (6th Cir.2002) (internal citation omitted) ("In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate.").

■ The FAA exempts "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The FAA excludes contracts of employment for transportation workers. *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 109, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001).

## IV. Analysis

### A. The Arbitration Clauses

The Carneys do not dispute that they signed the Leases or that the Leases contain written arbitration clauses. The clauses satisfy the FAA's written contract provision requirement.

The Carneys transported goods across state lines. (Marion Carney Decl. ¶ 4, ECF No. 12–1.) The Carneys were engaged in interstate commerce. When the Carneys transported goods across state lines for JNJ under the Leases, they engaged in transactions that affected interstate commerce under the FAA.

### B. The Scope of the Arbitration Clauses

The Carneys do not dispute that their claims fall within the scope of the Leases' arbitration clauses. The claims against JNJ under TIL regulations arise from alleged deficiencies in the Leases. The Leases must be interpreted to resolve those claims. The Carneys' claims are covered by the Leases' arbitration clauses.

### C. The Carneys' Federal Law Claims

■ The Carneys argue that they are JNJ employees such that their claims are not arbitrable under § 1 of the FAA. (Resp. at 2, 4.) JNJ alleges that the Carneys are independent contractors. (Reply at 2.) If the Carneys are independent contractors, their claims are arbitrable under the FAA.

The Carneys' claims are arbitrable. The Carneys rely on a trio of cases to show that they are JNJ employees. In *Gagnon v. Serv. Trucking, Inc.,* the plaintiffs were truck drivers who had signed "Independent Contractor Operating Agreements." 266 F.Supp.2d 1361, 1363 (M.D.Fla.2003). The court in *Gagnon* disregarded the title of the agreements and held that the plaintiffs were employees because "courts have imposed a statutory

employer-employee relationship between truck drivers and [ ] motor carriers [ ] premised on 49 U.S.C. § 14102, which requires motor carriers to assume control and responsibility of operating leased motor vehicles." *Id.* at 1365. The same court followed *Gagnon* in *Owner–Operator Indep. Drivers Ass'n v. Landstar Sys., Inc.,* 2003 WL 23941713, at *2 (M.D.Fla. Sept. 30, 2003).

The court in *Gagnon* relied on an erroneous interpretation of 49 U.S.C. § 14102. Under TIL regulations, "[n]othing in the provisions required [for lease agreements] is intended to affect whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier. An independent contractor relationship may exist when a carrier lessee complies with 49 U.S.C. § 14102...." 49 C.F.R. § 376.12(c)(4). Section 14102 does not per se create an employer-employee relationship between a truck driver and a motor carrier.

The Carneys also rely on *Owner–Operator Independent Drivers, Inc. v. C.R. England, Inc.,* 325 F.Supp.2d 1252 (D.Utah 2004). The court in *C.R. England* also disregarded the title of the agreement at issue, "Independent Contractor Operating Agreement," without citing any authority. *Id.* at 1258. The court held that the agreement was a contract of employment, because it "cover[ed] the owner-operator's agreement to perform personally ... certain functions related to the operation of the equipment for C.R. England's business, namely ... to transport freight on the company's behalf." *Id.*

The court in *C.R. England* did not explain why it held that the agreement was an employment contract based on the operation of the equipment in furtherance of C.R. England's business. All such agreements would be employment contracts if that were the only requirement.

JNJ relies on a line of authority that requires a truck driver who is classified as an independent contractor in the governing lease to prove that the FAA does not apply. *Owner–Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co.,* 288 F.Supp.2d 1033, 1035–36 (D.Ariz.2003). If a truck driver cannot prove that the FAA does not apply, the court should "apply the characterization of the relationship described in the agreement and find that an owner-operator characterized as an independent contractor does not have a contract of employment with the carrier." *Id.*

The court in *Owner–Operator Indep. Drivers Ass'n Inc. v. United Van Lines, LLC* agreed with the *Swift* court's approach because "it better effectuates the FAA's goals" by "further[ing] the complementary policies of favoring arbitration and narrowly construing the FAA's exceptions...." 2006 WL 5003366, at *4 (E.D.Mo. Nov. 15, 2006). The *United Van Lines* court also followed *Swift's* reasoning because that case "provides a sound methodology ... for determining whether an agreement qualifies as a contract of employment." *Id.*

 The opinions in *Swift* and *United Van Lines* are persuasive. The burden is on the Carneys to prove that the Leases are contracts of employment.

The Carneys argue that they were "essentially still employees of JNJ Express after they executed the [Leases]." (Resp. at 7.) They contend that nothing about the relationship involving the interstate transportation of goods changed. (*Id.*) The Carneys argue that they were still paid by the mile, they still used a JNJ truck and trailer, JNJ still dispatched them, and JNJ still controlled for whom they transported goods. (*Id.*)

JNJ did not have exclusive control over the Carneys' equipment once the Carneys

executed the Leases. (L433 ¶ 2; L461 ¶ 2.) The Carneys became responsible for determining the means of their performance under the Leases, including equipment, routes, and scheduling. (L433 ¶ 12; L461 ¶ 12.) The Carneys do not dispute that they had control over their equipment or that they determined the means of their performance. The Carneys have not presented any evidence that they had that type of control before they executed the Leases.

Before executing the Leases, JNJ paid for base plates, insurance, repairs, and other costs associated with the truck. (Marion Carney Decl. ¶¶ 6–7.) The Leases provide that the Carneys are responsible for costs such as fuel, oil, maintenance and repairs, primary insurance, and worker's compensation insurance. (L433 ¶¶ 5, 9–10, 21; L461 ¶¶ 5, 9–10, 21.) The Carneys admit that, after they executed the Leases, JNJ began charging them for base plates, insurance, and other costs associated with the equipment. (L433 ¶ 7; L461 ¶ 7; Marion Carney Decl. ¶ 14.) JNJ required the Carneys to maintain the Escrow Account to cover any repairs and other costs incurred. (L433 ¶ 13; L461 ¶ 13; Marion Carney Decl. ¶ 15.)

The Carneys' argument that they essentially remained JNJ employees is not well-taken. The lease at issue in *United Van Lines* provided that the driver "retains control over personnel decisions related to his obligations under the [lease] and over the means of performance." 2006 WL 5003366, at *1. That lease also provided that the motor carrier has "exclusive control over the equipment while the [lease] is in effect." *Id.*

The Leases do not give JNJ exclusive control over the Carneys' equipment. The Carneys are responsible for the equipment, its repairs, maintenance, and insurance. That shift in responsibility is a significant change from the Carneys' relationship with JNJ before executing the Leases. As in *United Van Lines*, the Carneys control the means of their performance under the Leases. The Carneys have failed to show that they are employees of JNJ. They are independent contractors. The FAA applies to the Carneys' claims.

## V. Conclusion

JNJ's motion to compel arbitration is GRANTED. All proceedings in this action are STAYED pending the result of the arbitration proceeding. *See* 9 U.S.C. § 3.