**OWNER–OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., et al., Plaintiffs,**

v.

**SWIFT TRANSPORTATION CO., INC. (AZ), et al., Defendants.**

**No. CV 02–1059–PHX–PGR.**

United States District Court, D. Arizona.

Sept. 26, 2003.

Randall Duane Wilkins, Brian J. Campbell, Bonn & Wilkins Chartered, Phoenix,

AZ, Paul D. Cullen, Sr., Joseph A. Hennessey, Daniel Unumb, The Cullen Law Firm PLLC, Washington, DC, for plaintiffs.

Brian Michael Goodwin, Paul M. Briggs, Shughart Thomson & Kilroy PC, Phoenix, AZ, Richard M. Paul, III, James C. Sullivan, Shughart Thomson & Kilroy PC, Kansas City, MO, for defendants.

## ORDER

ROSENBLATT, District Judge.

Among the motions pending before the Court is the defendants' Motion to Compel Arbitration (doc. # 42). Having considered the parties' memoranda, the Court finds that the motion should be granted.[1]

The defendants, citing to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* and the Tennessee Uniform Arbitration Act, T.C.A. § 29–5–301 *et seq.*[2], seek an order compelling arbitration of all of the claims of those plaintiffs who signed a Contract Hauling Agreement with defendant M.S. Carriers, Inc., pursuant to the provision in that contract which provided:

> This Contract shall be governed by the Laws of the State of Tennessee, both as to interpretation and performance. Any disagreement or litigation arising under this Contract shall be referred to mandatory arbitration and shall be decided under the rules of the American Arbitration Association and the laws of the State of Tennessee. The parties intend to create by this Contract the relation-

ship of CARRIER and INDEPENDENT CONTRACTOR and not an EMPLOYER–EMPLOYEE relationship. (Emphasis in original.)

The plaintiffs do not dispute that a written arbitration agreement exists or that it is part of a contract evidencing a transaction involving commerce for purposes of the FAA.

### A. Waiver

■ The plaintiffs initially argue that the defendants have waived their right to rely on the arbitration provision because, by requesting that the preliminary injunction hearing be combined with a trial on the merits, they sought to have the Court make a final ruling on the merits of whether the M.S. Carriers' contracts violate federal law. The Court disagrees.

Because waiver of the right to arbitration is disfavored, the plaintiffs bear a heavy burden of proof in establishing such a waiver. *Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 758 (9th Cir.1988); *see also, Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 724 (9th Cir.2000) ("We do not lightly find waiver of the right to arbitrate[.]") In order to prevail on this point, the plaintiffs must show that the defendants knew of their right to arbitrate, acted inconsistently with that right, and, in doing so, prejudiced the plaintiffs by their actions, *Chappel*, 232 F.3d at 724, and the Court must resolve any doubt as to whether a waiver occurred

---

1. The Court notes that it has intentionally not discussed every argument raised by the parties and that those arguments not discussed are considered by the Court to be unpersuasive, cumulative, not relevant, or otherwise not necessary to the resolution of the arbitration issue.

2. While the defendants' motion referred to the Arizona Arbitration Act, A.R.S. § 12–1501 *et seq.*, the Court concludes that the plaintiffs, who referred to the non-applicability of the

Arizona statute and the applicability of the Tennessee statute in their opposition to the motion, understand that the references to the Arizona statute were a mistake on the defendants' part and cannot be found to have been prejudiced by the defendants' references to the Tennessee statute in their reply. For that reason, the Court will deny Plaintiffs' Motion to Strike Portions of Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration (doc. # 88).

in favor of a finding of arbitrability. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.")

The Court concludes that the defendants did not waive their right to rely on the arbitration provision, either expressly or impliedly, because the plaintiffs have failed to establish that the defendants' litigation behavior has been inconsistent with an intent to stand on their right to arbitrate. In this case, the defendants filed their Motion to Compel Arbitration within three weeks after the Court denied their motion to dismiss this action, and the record of the preliminary injunction hearing establishes that the defendants' counsel merely requested that a directed verdict be entered in the event that the Court decided to combine the preliminary injunction hearing with the trial on the merits, which the Court did not do.

**B.  Applicability of the FAA**

▪ The plaintiffs also argue that they are exempt from compulsory arbitration as a matter of federal law pursuant to § 1 of the FAA, which provides in part that "nothing herein contained shall apply to contracts of employments of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The plaintiffs, who do not dispute that under the terms of the Contract Hauling Agreement they were independent contractors and not employees of M.S. Carriers, contend that § 1 nevertheless applies to them. The defendants argue that the § 1 exception is not applicable here because the Contract Hauling Agreement is clearly not a "contract of employment".

The plaintiffs, who have the burden of establishing that the FAA does not apply to their claims, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991), have not met that burden. The plaintiffs have neither cited the Court to any controlling case law establishing that the § 1 exemption is applicable under the circumstances of this action, and the Court is aware of none [3], nor have they presented the Court with any analysis showing that the owner-operators who signed the M.S. Carriers' contract at issue should in fact be considered employees based on the terms of the contract and the circumstances of their working relationship with M.S. Carriers. Given the strong and liberal federal policy favoring arbitral dispute resolution, the Court cannot conclude on this record that § 1

---

**3.** While the Supreme Court has limited the application of the § 1 exception to "contracts of employment of transportation workers[,"] *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119, 121 S.Ct. 1302, 1311, 149 L.Ed.2d 234 (2001), it has not determined whether a transportation worker who is an independent contractor is covered by the exemption; neither has the Ninth Circuit. What extremely little case law there is on this issue has produced a split of authority. *Compare Gagnon v. Service Trucking Inc.*, 266 F.Supp.2d 1361 (M.D.Fla.2003) (Court concluded that owner-operators who were independent contractors fell within the § 1 exemption and could not be compelled to arbitrate their claims that their contracts did not comport with the Federal Motor Carrier Truth–in–Leasing regulations), with *Roadway Package System, Inc.*, 1999 WL 817724 (E.D.Pa.1999), *aff'd*, 257 F.3d 287 (3rd Cir.), *cert. denied*, 534 U.S. 1020, 122 S.Ct. 545, 151 L.Ed.2d 423 (2001) (Court noted that the § 1 exemption was not applicable because the driver was an independent contractor and not an employee.)

bars the enforcement of the arbitration provision at issue.

## C. Scope of Arbitration Provision

■ The plaintiffs also argue that their federal statutory claims are not within the scope of the arbitration provision because those claims do not arise under the M.S. Carriers' contract; their contention is that the arbitration provision is a narrow one plainly limited to contractual disputes under Tennessee law. They do not assert that Congress has excluded the type of federal claims they are raising from arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. at 25, 111 S.Ct. at 1652 ("It is now clear that [federal] statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."); *accord, Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) ("This duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights.")

The scope of an arbitration provision is governed by federal law, *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 719 (9th Cir. 1999), and in accordance with the strong and liberal federal policy favoring arbitration agreements, courts construing arbitration agreements must broadly construe them and must resolve any ambiguities in an arbitration clause and any doubts concerning the scope of arbitrable issues in favor of arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. at 24–25, 103 S.Ct. at 941 (1983); *accord, AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) ("[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.") (Internal quotation marks omitted.) Nevertheless, since arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which that party has not agreed to submit to arbitration. *Id.,* 475 U.S. at 648, 106 S.Ct. at 1418.

The Court concludes that the arbitration provision at issue, which provides that "[a]ny disagreement or litigation arising under this Contract shall be referred to mandatory arbitration[,]" is susceptible of an interpretation that covers the statutory claims raised by the plaintiffs. *See Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 720 (9th Cir.1999) (Court liberally construed arbitration provision that required arbitration of "[a]ll disputes arising in connection with" the parties' contract.) *See also, Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. at 23, 111 S.Ct. at 1650 (Supreme Court concluded that a provision requiring the arbitration of "any dispute, claim or controversy" arising between the plaintiff and his employer arising out of the employment required the arbitration of the plaintiff's federal age discrimination claim); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628–29, 105 S.Ct. 3346, 3354–55, 87 L.Ed.2d 444 (1985) (Supreme Court concluded that a provision requiring the arbitration of "all disputes, controversies, or differences which may arise between [the parties] out of or in relation to" the parties' contract was broad enough to require the arbitration of a federal antitrust claim.)

In order for arbitration to be mandated under such a provision, the plaintiffs' factual allegations need only "touch matters" covered by the Contract Hauling Agreements because this type of arbitration pro-

vision "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Simula, Inc.* at 721. *See also, Mitsubishi Motors Corp.,* 473 U.S. at 624 n. 13, 105 S.Ct. at 3352 n. 13 ("[I]nsofar as the allegations underlying the statutory claims touch matters covered by the [contract provisions], the Court of Appeals properly resolved any doubts in favor of arbitrability.")

The Court concludes that the plaintiffs' federal statutory claims against M.S. Carriers are arbitrable because they arise from alleged deficiencies in the terms of the ·Contract Hauling Agreements and their resolution will require those contracts to be interpreted.

### D. Invalidity of M.S. Carrier Lease

■ The plaintiffs further argue that the arbitration provision is without· effect because the M.S. Carriers' Contract Hauling Agreement is void as being in violation of federal regulations.[4] The Court concludes that this is not a basis for not enforcing the arbitration provision because when a court is called upon to determine the threshold question of arbitrability, only the validity and scope of the arbitration clause itself, and not the contract as a whole, is to be considered. *Republic of Nicaragua v. Standard Fruit Co.,* 937 F.2d 469, 476 (9th Cir.1991), *cert. denied,* 503 U.S. 919, 112 S.Ct. 1294, 117 L.Ed.2d 516 (1992) ("[C]ourts may· not consider challenges to a contract's validity or enforceability as defenses against arbitration.... *Prima Paint* demands that arbitration clauses be treated as severable from the documents in which they appear unless their is clear intent to the con-

trary."), citing to *Prima Paint v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967).

### F. Failure of Arbitration Clause to Accord Plaintiffs their Statutory Rights

■ The plaintiffs further argue that the arbitration provision is unenforceable as to their statutory claims because it does not allow the plaintiffs to effectively vindicate their statutory rights. The Court is not persuaded by any of the arguments advanced by the plaintiffs. The fact ·that arbitration may not provide the plaintiffs with all of the procedural avenues available to them in this Court is not determinative of the enforceability of the arbitration provision since the Supreme Court has repeatedly recognized that "federal statutory claims can be appropriately resolved through arbitration" and ·has "rejected generalized attacks· on arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants." *Green Tree Financial Corp. v. Randolph,* 531 U.S. 79, 89–90, 121 S.Ct. 513, 521, 148 L.Ed.2d 373 (2000).

The plaintiffs' first contention is that the arbitration provision fails to provide them with their statutory rights to attorneys fees and broad injunctive relief. The Court cannot agree for several reasons. First, the arbitration provision does not on its face place any limitations on the plaintiffs' remedies. Second, the rules of the American Arbitration Association (AAA), to which the arbitration provision refers, specifically grant arbitrators the authority to award attorney's fees if they are authorized by law.[5] Third, injunctive relief·is not foreclosed by an arbitration because arbi-

---

4. At the time the plaintiffs filed their opposition to the Motion to Compel Arbitration, the issue of the validity of the M.S. Carriers' contract at issue was before the Court in connection with the Plaintiffs' Motion for Pre-

liminary Injunction. The Court subsequently denied the preliminary injunction motion.

5. The parties apparently agree that the AAA rules referred to in the arbitration provision are the AAA's Commercial Arbitration Rules.

trators enjoy broad equitable powers, and the AAA rules specifically provide that the arbitrator may grant "any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties[,]" and even if the plaintiffs are correct that an arbitrator may not have the same authority as the Court to issue broad company-wide injunctive relief, the plaintiffs have not established the likelihood of the need for such relief as to M.S. Carriers since is it has not shown that any of the contracts at issue are still in existence. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. at 32, 111 S.Ct. at 1655 (Supreme Court rejected argument that a provision requiring the arbitration of a federal age discrimination claim was not enforceable even if the arbitration procedures did not provide for broad equitable relief and class actions.)

The plaintiffs' second contention is that the arbitration provision is unenforceable because the arbitration procedures are inadequate to provide the plaintiffs with the discovery necessary to vindicate the plaintiffs' rights under the federal Truth-in-Leasing regulations. The Court cannot agree because it is unlikely that the plaintiffs' federal claims require more extensive discovery than other federal claims that the Supreme Court has found to be arbitrable, such as RICO and antitrust claims, and the plaintiffs have not established that the discovery mechanisms provided by the AAA rules will prove insufficient to allow the plaintiffs a fair opportunity to present their claims. *Gilmer*, 500 U.S. at 31, 111 S.Ct. at 1654–55. Furthermore, the plaintiffs have been able to undertake extensive discovery to date in this action and they have not shown that such discovery is not relevant or cannot be utilized in an arbitration proceeding.

The plaintiffs' third contention is that the arbitration provision is unenforceable because it exposes them to substantial arbitration costs. Although the Supreme Court has recognized that the existence of large arbitration costs could preclude a litigant from effectively vindicating his or her federal statutory rights in the arbitral forum, *Green Tree Financial Corp. v. Randolph*, 531 U.S. at 90, 121 S.Ct. at 522, the Court concludes that the plaintiffs have not met their burden of showing their likelihood of incurring prohibitively expensive arbitration costs. *Id.*, 531 U.S. at 92, 121 S.Ct. at 522. While the plaintiffs have, through the declaration of Bruce Meyerson, offered some evidence of what arbitration costs might be incurred in general through an AAA arbitration, their position is in effect based on speculation since arbitration costs depend on various factors to which no evidence specific to the plaintiffs has been submitted, *e.g.*, the amount in controversy, the length of the arbitration hearing, the location of the arbitration hearing, etc.; furthermore, the plaintiffs have not cited the Court to any evidence establishing that any such costs that might reasonably be incurred would in fact be prohibitive to the affected plaintiffs. *See id.*, 531 U.S. at 91, 121 S.Ct. at 522 ("The 'risk' that [the plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement.")

## G. Unconscionability of Arbitration Clause

The plaintiffs' final argument is that the arbitration provision is unenforceable because it is both procedurally and substantively unconscionable under Tennessee law. They argue that it is procedurally unconscionable because it consists of a single sentence containing no reference to statutory claims or rights being waived, it is buried in a boilerplate agreement drafted by M.S. Carriers, and it is imposed without explanation as a condition of employment on a take it or leave it basis; they argue that it is substantively

unconscionable because it is fundamentally unfair inasmuch as it is effectively one-sided. The Court cannot agree.

Because the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable" except when grounds "exist at law or in equity for the revocation of any contract[,]" 9 U.S.C. § 2, applicable state law contract defenses such as unconscionability may be applied to invalidate an arbitration agreement without contravening the FAA. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687–88, 116 S.Ct. 1652, 1656, 134 L.Ed.2d 902 (1996). The Tennessee courts recognize that unconscionability is a defense to the validity of an arbitration agreement. *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn.1996); they also recognize that an arbitration agreement is not unenforceable merely because it is a contract of adhesion.[6] *Id.* "Enforceability generally depends upon whether the terms of the contract are beyond the reasonable expectations of an ordinary person, or oppressive or uncon-

scionable. Courts will not enforce adhesion contracts which are oppressive to the weaker party or which serve to limit the obligations and liability of the stronger party." *Id.* The Tennessee courts have tended to lump procedural and substantive unconscionability together and to find it existing only "when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other." *Trinity Industries, Inc. v. McKinnon Bridge Co., Inc.*, 77 S.W.3d 159, 171 (Tenn. App.2002).

The arbitration provision at issue is not unconscionable under the Tennessee standard. First, the provision provides sufficient bilaterality in that it does not limit the liability or obligations of M.S. Carriers; both the owner-operators and M.S. Carriers are facially subject to the same arbitration rules.[7] Second, it does not contain

---

**6.** The Tennessee Supreme Court has defined an adhesion contract as

> a standardized contract form offered to consumers of goods and services on essentially a "take it or leave it" basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract.

*Buraczynski*, 919 S.W.2d at 320. Although the Court assumes for purposes of this motion that the M.S. Carrier's Contract Hauling Agreement is a contract of adhesion, the Court notes that the question is reasonably debatable under this definition because while the evidence submitted by the plaintiffs establishes that an owner-operator had no realistic ability to negotiate with M.S. Carriers to eliminate the arbitration provision from the Contract Hauling Agreement, the plaintiffs have not cited to any evidence establishing that any of them who did not wish to accept this arbitration requirement had to forgo employment as an owner-operator because he or she had no opportunity to work for another mo-

tor carrier which did not require the arbitration of disputes. Compare *Cooper v. MRM Investment Co.*, 199 F.Supp.2d 771 (M.D.Tenn.2002) (Court concluded that an arbitration agreement required as a condition of employment by a fast-food restaurant was an adhesion contract because an applicant's choice to "leave it" would probably mean the applicant foregoing the opportunity of employment given the state of the economy.), with *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 360 (Tenn.App.2001) (Court concluded that an arbitration agreement submitted to a car purchaser by the car dealership was not an adhesion contract because had the dealership refused to sell a vehicle to the plaintiff based on his refusal to sign the arbitration agreement, the plaintiff could have obtained a vehicle from another dealership.)

**7.** The Court cannot conclude that the arbitration provision is effectively one-sided, as the plaintiffs argue, merely because M.S. Carriers Warehousing & Distribution, Inc., a subsidiary of M.S. Carriers, pursues litigation against owner-operators based on an entirely

terms beyond the reasonable expectations of an ordinary person; it is in fact a standard arbitration provision set forth in a non-hidden manner in a six page contract. Third, its terms are not oppressive given that arbitration is decided under the nationally-recognized rules of the AAA.

Having determined that the parties' agreement to arbitrate reaches all of the individual plaintiffs' claims against M.S. Carriers and that there are no legal constraints external to the parties' agreement that forecloses the arbitration of these claims, the Court concludes that the claims at issue should be referred to arbitration and should be stayed pending the outcome of that arbitration. Therefore,

IT IS ORDERED that Plaintiffs' Motion to Strike Portions of Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion to Compel Arbitration (doc. # 88) is granted.

IT IS FURTHER ORDERED that the defendants' Motion to Compel Arbitration (doc. # 42) is granted and that all of the individual plaintiffs' claims against defendant M.S. Carriers, Inc. are referred to arbitration pursuant to 9 U.S.C. § 4 and that this action is stayed as to those claims pending the outcome of the arbitration(s) pursuant to 9 U.S.C. § 3.

IT IS FURTHER ORDERED that the defendants' Motion for Leave to File First Amended Answer and Counterclaims (doc. # 54) is granted.

IT IS FURTHER ORDERED that Plaintiffs' Motion to File a First Amended Class Action Complaint (doc. # 100) is granted.[8]

IT IS FURTHER ORDERED that the defendants' Motion for Leave to File Surreply to Plaintiffs' Reply Regarding Plaintiffs' Motion to File First Amended Class Action Complaint (doc. # 126) and Motion for Leave to File Supplement to Defendants' Opposition to Plaintiffs' Motion to File First Amended Class Action Complaint (doc. # 132) are both granted.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to File Affidavit of Bron Rammel, Esq. in Support of their Motion to Compel the Production of Documents (doc. # 125) is granted.

IT IS FURTHER ORDERED that the defendants' Motion for Leave to File Surreply to Plaintiffs' Reply Regarding Plaintiffs' Motion to Compel (doc. # 130) is granted.

IT IS FURTHER ORDERED that the parties' Joint Motion to Vacate Discovery Deadlines Pending a Scheduling Conference (doc. # 145) is granted to the extent that the deadlines and hearing dates set forth in the Court's Scheduling Order entered on October 29, 2003 (doc. # 36) are vacated.[9]

---

separate contract; such legal remedies are also available to the owner-operators in disputes with that company. The Court is also not persuaded by the other reasons raised by the plaintiffs as adversely affecting the bilaterality of the arbitration provision.

8. The Court concludes that the parties' motions to amend their pleadings should be granted because any prejudice caused by the timing of the motions in relation to the Court's Scheduling Order is nullified by the

now obvious need to amend the pretrial scheduling dates.

9. The affected deadlines are those for completing discovery, filing dispositive motions, and filing the Joint Pretrial States and related documents; the affected hearing date is the Pretrial Conference which was set for October 27, 2003. The Court will schedule a supplemental scheduling conference after it resolves the plaintiffs' pending motion for class certification.