# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 16, 2005 Session

## LUCY R. CHAPMAN v. H & R BLOCK MORTGAGE CORPORATION, ET AL.

### Appeal from the Chancery Court for Hamilton County
### No. 02-0186      Howell N. Peoples, Chancellor

---

### No. E2005-00082-COA-R3-CV - FILED NOVEMBER 28, 2005

---

This appeal presents the issue of the enforceability of an arbitration agreement. The plaintiff entered into a loan transaction with the defendant mortgage corporation to obtain funds on behalf of her daughter. The loan was secured by a mortgage on plaintiff's home. Plaintiff's daughter subsequently discontinued making payments on the loan, and plaintiff filed a petition to rescind the loan, asserting that plaintiff was caused to sign the loan by defendant lender's fraud. Several months after the case had been pending, lender demanded that the case be submitted to arbitration pursuant to an agreement signed by plaintiff when the loan was closed. The trial court granted lender's motion compelling arbitration. Plaintiff appeals, arguing that the arbitration agreement she entered into is unenforceable because it is an adhesion contract and is unconscionable and unreasonable. Plaintiff further argues that lender waived its right to compel arbitration under the circumstances in this case. We hold that the arbitration agreement is enforceable, and we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Cause Remanded

SHARON G. LEE, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and D. MICHAEL SWINEY, JJ., joined.

Whitney Durand, Chattanooga, Tennessee, for the Appellant, Lucy R. Chapman.

Winston S. Evans, Nashville, Tennessee, for the Appellees, H & R Block Mortgage Corporation and Option One Mortgage Corporation.

**OPINION**

## I. Background

In December of 1999, the Plaintiff/Appellant, Lucy R. Chapman, was approached by her daughter, Yvonne Daniels, who requested that Ms. Chapman's residence be presented as security for a mortgage loan on behalf of Ms. Daniels. Ms. Chapman and Ms. Daniels had several discussions regarding this request during the spring and summer of 2000, and eventually Ms. Chapman consented, with the understanding that the loan would be in the name of Lucy R. Chapman. Thereafter, Ms. Daniels contacted the Defendant/Appellee, H & R Block ("Block"), a national mortgage corporation, through the internet and commenced application for the loan. During the application process, Ms. Daniels presented herself to Block as Lucy R. Chapman and conducted all communications with Block. Ms. Chapman did not participate in these communications and had no knowledge of them.

The loan closing took place at Ms. Chapman's home on September 20, 2000. Present at closing were Yvonne Daniels, Lucy Chapman, and a representative of the loan closing agent. At closing, Ms. Chapman signed the loan application for a loan in the amount of $49,500, a promissory note, a deed of trust, and a notice of right to cancel. At that time, Ms. Chapman asked Ms. Daniels how long she (Ms. Chapman) had to cancel the loan transaction, and Ms. Daniels advised her that she had three days within which to cancel. Shortly after closing, the notice of right to cancel was also read to Ms. Chapman by a friend. The notice states a cancellation deadline of midnight on September 23, 2000.

At closing, Ms. Chapman also signed a two page document entitled "AGREEMENT FOR THE ARBITRATION OF DISPUTES," an identical copy of which is attached to this opinion as Appendix A. In general, this arbitration agreement provides that non-excepted disputes between Ms. Chapman and Block, related to the loan and not subject to informal resolution, shall be settled by arbitration at the option of either Ms. Chapman or Block. The agreement further provides that such arbitration shall be administered by the American Arbitration Association pursuant to its Commercial Arbitration Rules and governed by the Federal Arbitration Act.

Ms. Chapman did not rescind the contract within the three-day period provided in the notice of right to cancel and, upon expiration of that period, Block distributed the loan proceeds to General America Corporation ("GAC"), the entity acting as settlement agent in the transaction. GAC satisfied Ms. Chapman's first mortgage by direct payment and forwarded checks to her in the total amount of $43,667.06. One of these checks was payable to Ms. Chapman individually in the amount of $15,928.06, and the remainder were payable to creditors. Upon receipt of the checks, Ms. Chapman contacted Block and inquired as to whether she could still cancel the loan; however, she was advised that her prior mortgage had been paid in full, and it was too late to cancel. Thereafter, Ms. Chapman cashed the $15,928.06 check made out to herself and transmitted the other checks to Ms. Daniels who forwarded them to her (Ms. Daniels') creditors.

Within a year of closing, Yvonne Daniels ceased making payments on the loan. On February 19, 2002, Ms. Chapman filed a petition against Block to rescind the loan and set aside the deed of trust, alleging that Block "engaged in activities, which it knew or should have known were unconscionable, false, and fraudulent and which had the purpose of causing Mrs. Chapman to sign [the] mortgage loan." *Inter alia*, the petition seeks damages pursuant to the Tennessee Consumer Protection Act ("TCPA"). In addition to Block, the petition names as defendants Yvonne Daniels; Block's sister corporation, Option One Mortgage; GAC; and Dana M. Wiseman, an employee of GAC. Thereafter, the trial court entered a temporary restraining order enjoining foreclosure on Ms. Chapman's home.

In April, 2002, Block filed its answer to the petition, along with a cross-claim against Yvonne Daniels and a counterclaim against Ms. Chapman for breach of contract. The following month, Ms. Chapman filed a motion for default judgment against GAC, and Yvonne Daniels filed her answers to Ms. Chapman's petition and Block's cross-claim. Later in the month, the trial court entered a default judgment against GAC.

On July 9, 2002, Ms. Chapman amended her petition to add Wells Fargo Bank Minnesota, N.A. ("Wells Fargo") as an additional defendant in the case, upon information that Wells Fargo was the owner, as trustee, of the mortgage upon her home. On July 15, 2002, the trial court entered an order enjoining Wells Fargo from foreclosing on Ms. Chapman's residence.

On or about August 23, 2002, Block filed its demand for arbitration of its dispute with Ms. Chapman with the American Arbitration Association. On October 2, 2002, Block filed a motion to compel Ms. Chapman to submit her claim against Block to arbitration pursuant to the arbitration agreement, which allows either party thereto to request that a dispute be submitted to arbitration either before a lawsuit has been served or "*within 60 days after* a complaint, an answer, a counterclaim or *an amendment to a complaint has been served.*" (emphasis added). A hearing on this motion was held on October 14, 2002, and on November 19, 2002, the trial court entered an order compelling arbitration pursuant to the Federal Arbitration Act. The trial court further ordered that Block bear all fees and costs associated with the arbitration process.

Arbitration of the claims between Ms. Chapman and Block took place on August 2 and 3, 2004. The arbitrator determined that all claims filed by Ms. Chapman against Block should be denied and that the loan documents signed by Ms. Chapman were valid and enforceable against her. Ms. Chapman then filed a motion requesting that the trial court reconsider its decision to compel arbitration; however, this motion was denied by memorandum opinion and order entered December 13, 2004, and the present appeal followed.

## II. Issues

We address two issues in this appeal:

1) Was the arbitration agreement entered into by the parties unconscionable?

2) Did Block waive its right to compel arbitration under the circumstances of this case?

## III. Standard of Review

Our standard of review in this non-jury case is *de novo* upon the record of the proceedings below, and there is no presumption of correctness with respect to the trial court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996) and Tenn. R. App. P. 13(d). The trial court's factual findings are, however, presumed to be correct, and we must affirm such findings absent evidence preponderating to the contrary. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

## IV. Analysis

### A.

The first issue we must resolve is whether the arbitration agreement between Ms. Chapman and Block is unenforceable upon grounds that it is unreasonable and unconscionable.

In *Buraczynski v. Eyring*, 919 S.W.2d 314 (Tenn. 1996), the Supreme Court was presented with the question of whether an arbitration agreement between a physician and a patient was enforceable in a medical malpractice action. In that case, the Court acknowledged a general legislative policy favoring enforcement of agreements to arbitrate. However, the Court stated that an arbitration agreement will not be enforced if it constitutes a contract of adhesion and "contain[s] such unconscionable or oppressive terms as to render [it] unenforceable." *Id.* at 320.

The Court adopted the definition of "adhesion contract" set forth in Black's Law Dictionary 40 (6th ed. 1990) as "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." The Court noted, however, that the fact that a contract is one of adhesion is not determinative of the contract's enforceability. The Court stated that "Courts will not enforce adhesion contracts which are oppressive to the weaker party or which serve to limit the obligations and liability of the stronger party" and that "[e]nforceability generally depends upon whether the terms of the contract are *beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable*." (emphasis added) *Id.* at 320. *See also*, *Taylor v. Butler*, 142 S.W.3d 277, 286 (Tenn. 2004).

Although the parties in the instant matter disagree as to whether the arbitration agreement constitutes an adhesion contract, we need not resolve that dispute should we determine that the arbitration agreement is not "beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." For even if the arbitration agreement is found to be an adhesion contract, it is still enforceable if it is reasonable and not unconscionable or oppressive. Ms. Chapman makes

various arguments in support of her assertion that the arbitration agreement she entered into with Block "is both procedurally and substantively unconscionable."

First, Ms. Chapman argues that the arbitration agreement is unconscionable because, she alleges, the agreement "was inconspicuously placed among the loan documents." She asserts that "[t]he loan documents were 36 in number and 61 pages in length, and called for the signature or initials of Mrs. Chapman in 39 places."

We do not agree that the arbitration agreement in this case was inconspicuous. The agreement is not buried or hidden in a contract among terms unrelated to arbitration. Rather, it is a stand-alone two-page document and is entitled "AGREEMENT FOR THE ARBITRATION OF DISPUTES" in capital letters. The terms of the agreement are clearly set forth in ten short paragraphs presenting straightforward explanations of matters relating to arbitration. In addition, the second paragraph of the agreement ends with the italicized sentence, "*If you have any questions, you should consult your own lawyer before you sign this Agreement.*" And, directly above the borrower's signature line the agreement states in capital letters "THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES."

Ms. Chapman contends that our decisions in *Howell v. NHC/Healthcare-Fort Sanders, Inc.*, 109 S.W.3d 731 (Tenn. Ct. App. 2003) and *Raiteri v. NHC Healthcare/Knoxville, Inc.,* No. E2003-00068-COA-R9-CV, 2003 WL 23094413 (Tenn. Ct. App. E.S., filed Dec. 30, 2003) support her argument that the arbitration agreement in this case was inconspicuous and therefore unconscionable. We respectfully disagree. In *Howell*, we specifically noted that the arbitration agreement found to be unconscionable was not a stand-alone document, but instead was "buried" on the next to last page of a larger agreement and was printed in the same size font as the rest of the agreement. Similarly, the dispute resolution procedures found to be unenforceable in *Raitieri* were not set forth in a stand-alone document, but were set forth in an eleven-page contract dealing with many issues. In the latter case, we also acknowledged as significant the fact that the provisions at issue did not include short explanations encouraging patients to ask questions and were "buried" and not clearly laid out.

Next, Ms. Chapman contends that the arbitration agreement was unconscionable because it compelled her to waive constitutional rights in a unlawful manner. In this regard, Ms. Chapman states as follows:

> Mrs. Chapman did not waive the constitutional rights to a judicial hearing and a jury trial in a voluntary, knowing, and willing manner. How could she have done so when her eyesight was so poor that she couldn't read the documents, and her daughter had to guide her hand to the places for her signature? No one in her presence at the closing (which took place in the unconventional setting of her home) was acting in her interest rather than their own. Both Mrs. Chapman's daughter and the closing agent received, directly or indirectly, money

from the loan proceeds.  No attorney or attorney-in-fact advised her or acted for her.  No one bothered to read or explain the documents to her.

In support of her statement that her eyesight was so poor she couldn't read the loan documents at closing, Ms. Chapman references nothing other than her own petition of February 13, 2002, wherein she alleged that at the time of closing she had cataracts that prevented her from reading the documents. Further, Ms. Chapman does not refute evidence introduced at the arbitration hearing which indicates that approximately one month after she signed the loan documents in this case and before she had any surgery to correct her vision, she read and completed medical history forms that apparently were printed in font no larger than that contained in the loan documents. We also note that Ms. Chapman has stipulated that she did not ask anyone to read any of the loan documents to her at closing, nor does she assert that she asked that any of the documents be explained to her and was refused.

Any assertion by Ms. Chapman that she did not read the loan documents before signing them does not, in any event, absolve her from complying with the matters agreed to or justify a conclusion that her agreement, including the agreement to submit to arbitration, was made unknowingly.  In *Giles v. Allstate Ins. Co., Inc.*, 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993), we recognized the following general rule in this regard:

> 'To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contract.' 12 Am. Jur., 629.  'In this connection it has been said that one is under a duty to learn the contents of a written contract before he signs it, and that if, without being the victim of fraud, he fails to read the contract or otherwise to learn its contents, he signs the same at his peril, and is estopped to deny his obligation, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence.' 17 C.J.S., Contracts, § 137, pages 489,490.
>
> 'It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained.  If this were permitted, contracts would not be worth the paper on which they are written.  But such is not the law.'

(internal citations omitted).  *See also Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 359 (Tenn. Ct. App. 2001).

In *Flanary v. Carl Gregory Dodge of Johnson City, LLC*, No. E2004-00620-COA-R3CV, 2005 WL 12777850 (Tenn. Ct. App. E.S., filed May 31, 2005), the plaintiff filed suit against an automobile dealership, asserting various claims described as "violation of the TCPA, engaging in the unauthorized business of law, 'uniform' intentional misrepresentation, fraud in the inducement of contract, and common law claims for money had and received, and unjust enrichment." The plaintiff had signed an agreement with the defendant providing that such claims would be subject to settlement by arbitration at the demand of either party; however, the plaintiff argued that that agreement "constitute[d] an unknowing waiver of his statutory and constitutional rights." We disagreed, stating as follows:

> [Plaintiff] contends that the Agreement constitutes an unknowing waiver of his statutory and constitutional rights. This self-proclaimed public policy argument centers around two beliefs: (1) "that a statutory claim, because of the third party and public interests involved, is not suitable for arbitration and should be decided by a court, not an arbitrator," and (2) "that the arbitration process is not capable of resolving these disputes in accordance with the law or protecting the interests of the consumer."
>
> With respect to the argument that a statutory claim is not suitable for arbitration, we have previously quoted at length from *Pyburn* as to why a statutory claim under the TCPA is suitable for arbitration. *Furthermore, as to the claim that arbitration cannot adequately resolve disputes such as [Plaintiff's] in accordance with the law or in accordance with the consumer's rights, we know of no reason why such claims cannot be fairly arbitrated.*

*Flanary* at *8 (emphasis added).

We find no basis for distinguishing Ms. Chapman's relinquishment of rights in favor of arbitration from the *Flanary* plaintiff's relinquishment of those same rights, including the right to a judicial forum and trial by jury. And, in this case as in *Flanary*, we know of no reason why the disputed matters could not be fairly arbitrated in accordance with the law and the consumer's rights.

Next, Ms. Chapman argues that the terms of the arbitration agreement are oppressive because they give Block the following judicial remedies that are not available to Ms. Chapman:

> • Judicial or non-judicial foreclosure,
> • Repossession of collateral without court proceedings or by the replevin of it through litigation,
> • The appointment of a receiver by a court,
> • Setting off and other self-help remedies,
> • Injunctive relief, which of course involves litigation,

• Sequestration, presumably meaning a writ issued by a court authorizing the seizure of property,

• Attachment, which typically occurs after a judgment has been obtained, and

• Garnishment, meaning that a judgment in a collection action for a deficiency must first have been obtained.

Ms. Chapman contends that the appearance of mutuality in the agreement is illusory and that the trial court erred in finding that "the access to a judicial forum is the same for both parties." Ms. Chapman cites *Taylor v. Butler*, 142 S.W.3d 277 (Tenn. 2004) in support of her argument that the arbitration agreement is unconscionable due to lack of mutuality.

In *Taylor*, the parties entered into a contract for the purchase of a used automobile. The contract contained a provision that all claims and disputes between the purchaser and the dealer arising from the sale of the vehicle would be settled by binding arbitration except the dealer reserved the right to pursue recovery of the vehicle under the Tennessee Uniform Commercial Code and collection of debt by state court action. The purchaser made a down payment to the dealer and signed a promissory note for the balance of the sale price. Upon delivery of the vehicle, the purchaser also signed an agreement that if she was unable to obtain proper financing within three days, the dealer was allowed to rescind the sale and repossess the vehicle. The purchaser was unable to obtain financing, and the dealer repossessed the vehicle which it retained along with personal items belonging to the purchaser that were in the vehicle when it was repossessed. The dealer also retained the down payment. The purchaser then filed suit against the dealer under the Tennessee Consumer Protection Act charging, *inter alia*, that the dealer improperly obtained her personal property and the down payment monies by using deceptive practices. Upon motion of the dealer, the trial court dismissed the purchaser's complaint and held that the purchaser was bound by the arbitration provision in the contract of purchase. On appeal, the Tennessee Supreme Court focused upon language in the arbitration provision that allowed the dealer to pursue recovery of the vehicle and collection of debt by state court action. The Court held that the arbitration provision was unconscionable and void because it provided the dealer with "a judicial forum for practically all claims it could have against [the purchaser]" while requiring the purchaser to arbitrate any claim she might have against the dealer.

The provision in the arbitration agreement complained of by Ms. Chapman states as follows:

> **Exceptions:** The following are not disputes subject to this Agreement: (1) any judicial or non-judicial foreclosure proceeding against any real or personal property that serves as collateral for the loan, whether by the exercise of any power of sale under any deed of trust, mortgage, or other security agreement or instrument or under applicable law, (2) the exercise of any self-help remedies (including repossession and setoff rights) and (3) provisional or ancillary remedies with respect to the loan or any collateral for the loan such

-8-

as injunctive relief, sequestration, attachment, replevin or garnishment, the enforcement of any assignment of rents provision in any loan documents, the obtaining of possession of any real property collateral for the loan by an action for unlawful retainer or the appointment of a receiver by a court having jurisdiction. This means that nothing in this Agreement shall limit your right or our right to take any of these actions. The institution and/or maintenance of any action or remedy described in this paragraph shall not constitute a waiver of your right or our right to arbitrate any dispute subject to this Agreement.

We are compelled to disagree with Ms. Chapman that this paragraph of the agreement provides Block with a disproportionate share of remedial rights. Under this paragraph, Ms. Chapman is allowed to seek injunctive relief, which she did in this case. Further, she is allowed to raise defenses in a judicial forum with respect to each of the excepted matters. And, even were we to find that the "Exceptions" paragraph provides Block with a disproportionate share of remedial rights, we do not agree that this finding would require that we void the arbitration agreement *in toto* in light of the fact that the agreement also contains the following severability clause:

> **Severability:** If any provision of this Agreement or the application of any provision of this Agreement to any person, place or circumstance shall be determined to be invalid, unenforceable or void, the remainder of this Agreement, and the remainder of those provisions of this Agreement as applied to other persons, places and circumstances, shall remain in full force and effect.

In the event that a provision of an arbitration agreement is found to be invalid, that provision may be deleted from the agreement, and otherwise the agreement may be given full effect consistent with the general policy of favoring the enforcement of arbitration agreements. *Knaffl v. The Douglas Company*, 03A01-9901-CH-00006, 1999 WL 894203, (Tenn. Ct. App.filed Oct. 15, 1999).

Ms. Chapman also argues that the arbitration agreement is unconscionable because it results in the imposition of excessive fees and expenses. Ms. Chapman asserts that, although the intitial filing fee required in arbitration is only $750, under the applicable rules of the American Arbitration Association ("AAA") a borrower is subject to the imposition of substantially more fees and expenses if he or she should fail to prevail in the arbitration of a dispute. Ms. Chapman estimates that the total expenses and fees a borrower might face for a two-day arbitration hearing could easily exceed $2,800.00.

We find Ms. Chapman's argument regarding potential costs to be without merit for two reasons. First, as we have noted, the trial court decreed that all fees and expenses of arbitration in this case would be paid by Block. In *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 363 (Tenn. Ct. App. 2001), we stated that "[w]hen 'a party seeks to invalidate an arbitration agreement on the

ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.' " (citing *Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S. 79 (2000)). Having been absolved of any responsibility for the costs and expenses of which she complains, Ms. Chapman has not met this burden. Second, in *Pyburn* we also specifically rejected the argument that costs of arbitration are potentially prohibitive for some plaintiffs and stated as follows:

> While an initial filing fee may have to be advanced by a plaintiff in a claim involving a small consumer transaction, Rule R-45 of the Commercial Rules [of the AAA] allows the arbitrator to assess fees, expenses, and compensation of the arbitrator in a manner deemed appropriate by the arbitrator. A successful plaintiff, therefore, could have all of the "potentially prohibitive" costs shifted to the defendant. Rule R-45 also permits the arbitrator to award attorney's fees to a successful plaintiff who arbitrates a TCPA claim because an award of attorney's fees is authorized by law. *See* T.C.A. § 47-18-109(e)(1). The arbitrator can also assess costs as he or she sees fit for expenses of the arbitration, including the arbitrator and witnesses. Rule R-52. For all practical purposes, an award of costs, expenses, and attorney's fees are on the same footing in this case regardless of whether the parties arbitrate the claim or proceed in a court of law. Even if the Commercial Rules of the AAA specifically did not allow a successful plaintiff to recover costs, etc., these items could nevertheless be recovered by Plaintiff in arbitration because they are part of his statutory claim pursuant to the TCPA. *See* T.C.A. § 47-18-109(e)(1) (authorizing an award of costs and attorney's fees to a successful plaintiff).

*Pyburn,* 63 S.W.3d at 363.

Ms. Chapman next contends that the arbitration agreement is oppressive because it provides that "[t]he arbitration may not address any dispute on a 'class action' basis." She maintains that this provision "is one-sided because lenders almost never bring class actions." For this reason, Ms. Chapman argues that the agreement violates the principle of mutuality of remedy.

As Block correctly observes in its response to this argument, Ms. Chapman "has never sought or even alleged class action status in this case." In *Pyburn,* as in the present matter, the plaintiff argued that the arbitration agreement it had entered into was unenforceable because it did not provide for class action relief. In arriving at our conclusion that the arbitration agreement was enforceable in that case even though the plaintiff could not pursue class action thereunder, we determined that the plaintiff could effectively prosecute his TCPA claims through arbitration without recourse to a class action. We also noted that, as in the instant matter, the trial court had not certified any class. "At most, Plaintiff had only a possibility of litigating a class action with no guaranty that the Trial

-10-

Court ever would certify a class in this lawsuit." *Id.* at page 365. In accordance with *Pyburn,* we are compelled to disagree with Ms. Chapman's contention that the arbitration agreement should not be enforced upon grounds that it prohibits class action lawsuits.

Next, Ms. Chapman references that language in the arbitration agreement which states that "[o]nly disputes involving [Ms. Chapman] and [Block] may be addressed in the arbitration." Ms. Chapman contends that this limitation precludes her from arbitrating disputes with any defendants other than Block, and therefore she has been required to arbitrate her dispute with Block while simultaneously litigating her dispute with other defendants in the case. Ms. Chapman contends that such terms are oppressive in light of the possibility of inconsistent results in litigation and arbitration and the additional expenses required to simultaneously pursue her claims in both litigation and arbitration.

Even should we agree that disputes with the other defendants in this case are not subject to arbitration under the agreement, it does not follow that the arbitration agreement is, for that reason, unconscionable and unenforceable. Ms. Chapman presents no legal authority in support of this argument, and the United States Supreme Court has indicated that an agreement to arbitrate is enforceable "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217 (1985).

Finally, Ms. Chapman argues that the arbitration agreement is unconscionable because it provides that arbitration is to be conducted pursuant to the Commercial Arbitration Rules of the AAA. Ms. Chapman contends that these rules are "one-sided." As grounds for this argument, Ms. Chapman specifically asserts that under the applicable rules, 1) the arbitrator is not required to give a reasoned explanation of his decision; 2) the arbitrator is not required to follow either the Tennessee or Federal Rules of Evidence; 3) appeals from the decision of the arbitrator are severely circumscribed; and 4) in his or her discretion, the arbitrator may decline a borrower's request to engage in discovery before the hearing.

We are unable to find merit in this argument. With respect to the first three of the above four assertions offered in support of her argument that the applicable rules of arbitration are "one-sided," Ms. Chapman presents no explanation as to how the deficiency she alleges handicaps only one party to the arbitration. Assuming the matters described do constitute deficiencies in the arbitration process, it would appear to us that these alleged deficiencies affect both parties equally. Ms. Chapman complains that the rules do not require the arbitrator to allow "a borrower" to engage in discovery before a hearing, but we are compelled to point out that the arbitrator's discretion in this regard is likewise not limited to borrowers alone. In this regard, Commercial Rule R-23 states as follows:

> a. At the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct (i) the production of documents and other information, and (ii) the identification of any witnesses to be called.

-11-

Ms. Chapman indicates that this rule primarily handicaps the consumer because "extensive discovery is the single most important part of a consumer's case," and she speculates that "[t]he possibility of an arbitrator allowing extensive discovery would seem to be remote in most cases." However, Ms. Chapman does not assert that she was denied any request related to discovery in this case, and she does not maintain that she was prejudiced by this rule in any way whatsoever nor does she present any evidence to that effect.

Based upon our careful review of the record and relevant law, it is our conclusion that the arbitration agreement between Ms. Chapman and Block is reasonable and is not unconscionable.

B.

The second issue addressed in this appeal is whether Block was precluded from invoking the arbitration agreement because it waived its right to do so under the circumstances in this case.

The arbitration agreement provides as follows regarding the time at which a party may compel arbitration:

> Either you or we can request that a dispute be submitted to arbitration. Either you or we can do this before a lawsuit (which is usually initiated by the filing of a "complaint") has been served or within 60 days after a complaint, an answer, a counterclaim or an amendment to a complaint has been served.

In this case, Block demanded arbitration of the dispute between itself and Ms. Chapman on or about August 23, 2002. On July 9, 2002, Ms. Chapman amended her petition to add Wells Fargo as a defendant in the case upon information assertedly received by her identifying Wells Fargo as the owner of the mortgage on her home which she previously believed was held by Option One, Block's affiliate. Because Block's demand for arbitration was made within sixty days of this amendment, it is beyond dispute that the demand for arbitration was timely under the letter of the agreement, which allows a request for arbitration to be made within 60 days of an amendment to a complaint. Nevertheless, Ms. Chapman argues that Block should not have been allowed to invoke the arbitration agreement when it did.

Ms. Chapman contends that the word "amendment" as used in the arbitration agreement "connotes a request for additional relief against the opposing party." Ms. Chapman asserts that the amendment she filed on July 9, 2002, adds Wells Fargo as a defendant because apparently Block had transferred Ms. Chapman's mortgage loan to Wells Fargo. Ms. Chapman maintains that the amendment does not connote a request for any additional relief against Block and does not alter the nature of the dispute between herself and Block. Ms. Block argues that the word "amendment" should be construed to mean an amendment that "envisions a new set of contentions and denials, a new requirement of proof, or both." Ms. Chapman insists that only a "tortured interpretation" of

the clause in question would allow Block to invoke arbitration within 60 days of an amendment such as the one she filed on July 9, 2002. Ms. Chapman insists that such an interpretation belies common sense and is beyond the reasonable expectations of an ordinary person.

We find no basis in the agreement itself for adopting the narrow construction of the word "amendment" urged by Ms. Chapman. The agreement expressly allows either party to request arbitration within 60 days after "an amendment," and no restrictions are stated with respect to the meaning of "amendment." Furthermore, a construction such as that requested by Ms. Chapman is inconsistent with the overriding policy we recognized in *Pyburn v. Bill Heard Chevrolet* at page 357:

> When parties agree to arbitration, the FAA ensures enforcement of that agreement and the States cannot require a judicial forum for the resolution of a claim that the parties agreed to arbitrate. [*Frizzell Construction Company, Inc., v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 84 (Tenn. 1999)] "Therefore, the question essentially becomes 'what the contract has to say about the arbitrability of petitioner's claim ....' " *Id.* (quoting *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 58, 115 S. Ct. 1212, 1216, 131 L.Ed.2d 76 (1995)). If the parties agree to arbitrate a claim then it must be submitted to arbitration even if Tennessee law would prohibit arbitration of that particular claim. *See Frizzell,* 9 S.W.3d at 84. "*[A]s a matter of federal law, any doubts should be resolved in favor of arbitration .... To that end, 'the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide in favor of arbitration.' " American Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 92 (4th Cir. 1996) (emphasis added) (omissions in original).

Ms. Chapman also contends that Block waived its right to compel arbitration because it did not invoke that right until over six months after she filed her petition, and by that time "the case was well under way." Ms. Chapman further asserts that she has been prejudiced by Block's delayed request for arbitration because of the substantial effort and expenses she has experienced during the months preceding entry of the order compelling arbitration.

Consistent with public policy in favor of arbitration, there is a generally recognized presumption against waiver. *J. Wise Smith and Associates, Inc. v. Nationwide Mut. Ins. Co.,* 925 F.Supp.2d 528,530-531 (W.D. Tenn. 2003). A party seeking to prove waiver of an agreement to arbitrate bears a heavy burden, as noted by the Court in *Owner-Operator Independent Drivers Association, Inc.*, 288 F.Supp.2d 1033,1034 (D. Arizona 2003), a case arising out of a contract between plaintiff truck drivers and defendant motor carriers:

> Because waiver of the right to arbitration is disfavored, the plaintiffs bear a heavy burden of proof in establishing such a waiver. *Van Ness*

*Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 758 (9th Cir. 1988); *see also, Chappel v. Laboratory Corp. Of America,* 232 F.3d 719, 724 (9th Cir. 2000) ("We do not lightly find waiver of the right to arbitrate[.]") In order to prevail on this point, the plaintiffs must show that the defendants knew of their right to arbitrate, acted inconsistently with that right, and, in doing so, prejudiced the plaintiffs by their actions, *Chappel,* 232 F.3d at 724, and the Court must resolve any doubt as to whether a waiver occurred in favor of a finding of arbitrability. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or like defense to arbitrability.")

Ms. Chapman cites two cases involving Tennessee law to support her argument that Block waived its right to demand arbitration - *J. Wise Smith & Assocs. v. Nationwide Mut. Ins. Co., supra* and *Bard's Apparel Mfg.*, *Inc. v. Bituminous Fire & Marine Ins. Co.,* 849 F.2d 245 (6th Cir. 1988). Although each of these cases pertained to the right of a defendant to demand an appraisal rather than arbitration, in *J. Wise Smith & Assocs.* at page 530, the Court acknowledged that the same law applies to appraisal clauses and arbitration clauses. Based upon our review of these cases we cannot agree that the activity engaged in prior to Block's demand for arbitration was either sufficiently inconsistent with its demand for arbitration or sufficiently prejudicial to Ms. Chapman to warrant a finding of waiver.

In *J. Wise Smith & Assocs.*, the plaintiff insured sustained damage as the result of an ice storm and submitted its claim to the defendant insurer. The Court found that the defendant had waived its right to compel an appraisal under the insurance policy upon the following findings:

> In this case, defendant made a written demand for appraisal on plaintiff and moved the Court to compel appraisal only after defendant paid part of plaintiff's claim, plaintiff initiated this suit, defendant removed the suit to this Court, defendant filed an answer, the Court held a scheduling conference, and both parties made their Fed.R.Civ.P. 26 disclosures. Further, defendant's motion to compel appraisal was filed on the last day to file pretrial motions, after the close of discovery and only five weeks before the scheduled start of trial.

*J. Wise Smith & Assocs.,* 925 F.Supp.2d at 532.

The second case cited by Ms. Chapman, *Bard's Apparel Mfg., Inc.,* involved a suit by an insured against its insurer to recover losses in consequence of damaged property and interruption to business. The Court found that insurer had waived its right to compel an appraisal under the following circumstances:

> Here, the parties spent approximately six months discussing an adjustment of the loss without [insurer] requiring [insured] to submit a Sworn Statement in Proof of Loss, and [insurer] twice attempted to pay the loss without agreement by [insured]. In the interim, the insured property was disposed of so that any appraisal would have proceeded without the presence of a subject matter. It was only after notice of [insured's] intention to file suit that [insurer] first attempted to invoke the appraisal provision of the insurance policy; the business interruption loss was not subject to appraisal in any event.

*Bard's Apparel Mfg., Inc.* 849 F.2d at 249.

Ms. Chapman describes the activity that took place in this case between the time she filed her petition and the time that Block demanded arbitration as follows:

> Not only had Block and another defendant answered the original Petition, but restraining orders had been entered on two separate occasions, discovery had commenced, Block had responded to interrogatories, two motions had been filed and been heard, and a default judgment had been obtained (though it was later set aside) against still another of the defendants.

We do not agree that the activity described by Ms. Chapman is comparable to the activity described in the two cases cited. It is neither so inconsistent with arbitration as to show an abandonment of that right, nor has it prejudiced Ms. Chapman to such a degree as to warrant a finding of waiver. Block's answer to Ms. Chapman's petition and response to interrogatories only served to provide Ms. Chapman with information that she likely would have requested whether the case was arbitrated or litigated. Ms. Chapman also presents no argument as to how she was prejudiced by the filing and hearing of the two motions she avers to or by the entry of a default judgment against one of the defendants.

For the reasons stated, we do not agree that Block waived its right to compel arbitration.

C.

As a final matter, we note Ms. Chapman's motion filed in this Court wherein she requests that, in response to Block's assertion that she was not prejudiced by Block's delay in requesting arbitration, she be allowed to file an affidavit showing time expended by her attorneys prior to entry

-15-

of the trial court's order compelling arbitration. Block argues that this motion should not be granted because it would be improper to allow the introduction of evidence before this Court that was not presented to the trial court when it entered its order. We reserved our decision regarding this motion; however, upon our review of the record before us and our analysis in the context of applicable law, it is our determination that acceptance of the affidavit offered by Ms. Chapman would not affect our decision as set forth herein. Accordingly, we find the motion moot.

## IV. Conclusion

For the foregoing reasons, we hold that the arbitration agreement between Ms. Chapman and Block is enforceable. Accordingly, we affirm the judgment of the trial court compelling arbitration and remand for whatever further action may be necessary as consistent with this opinion. Costs of appeal are adjudged against the appellant, Lucy R. Chapman.

_____
SHARON G. LEE, JUDGE

-16-